

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

July 28, 1958

Hon. Robert S. Calvert
Comptroller of Public Accounts
Capitol Station
Austin 10, Texas

Opinion No. WW-479

Re: Whether Comptroller can ap-
prove motor fuel tax refund
claim form signed in blank
by claimant and later filled
in by notary public with
executed jurat, and whether
notary's act in filling in
the form and executing the
jurat constitutes a felony
within the provisions of
Section 27(m), Article 7065b,
V.C.S.

Dear Mr. Calvert:

We quote the following excerpt from your letter request-
ing our opinion on the above captioned matters:

"This department has become concerned with
the practice among certain notaries public of
accepting tax refund claim forms signed in blank
by the claimant and then filling in the informa-
tion on the form and the notary's jurat after the
claimant has gone. One notary public contends
that he obtains from the claimant an oral state-
ment or a written memorandum, as to all material
information to be inscribed in the claim, which
information he (the notary) thereafter fills in
on a claim form which has been signed in blank,
executes his jurat and files the claim with the
Comptroller; in other instances the notaries
maintain a permanent card file on each claimant
they serve showing the kind of tractor or tractors
owned, the acreage farmed and the kind of crops,
and acreage usually planted to each, from which
general information he prepares, notarizes and
files the claim form signed in blank and left with
him by the claimant.

"We have recently interviewed eighty-eight
(88) farmer-claimants, whose claims were prepared
by four notaries public in South East Texas, of

which 57 of them (64%) stated in affidavits that the claim form was signed in blank and left with the notary public to complete later.

"Investigation showed that a number of the claimants had used different kind of tractors or equipment from that stated in the claim form. In other instances the actual acreage tilled and the crops grown were different from that shown on the claim as filed. In a few instances the claimant admitted that a part of the motor fuel upon which claim for tax refund was shown as used in tractors was actually used for taxable purposes on the highways.

"The claims, when they reached the Comptroller, all appeared to be regular and in proper form and would have been paid had not they been investigated.

"1. Will you therefore please advise whether -in view of the requirement in Section 13(f) . . ./of Article 7065b, V.C.S./ that a refund claim . . . shall be verified by affidavit of the claimant - the Comptroller can legally approve a tax refund claim form signed in blank by a claimant and left with a notary public who, at a later time and after the claimant has departed from his presence, fills in the gallonage and other requisite information from a memorandum or oral information previously supplied by the claimant, after which he executes his jurat and files the claim with the Comptroller without further contact with the claimant?"

Article 7065b-13(a) reads as follows:

"(a) In all refund claims filed under this section the burden shall be on the claimant to furnish sufficient and satisfactory proof to the Comptroller of the claimant's compliance with all provisions of this Article; otherwise, the refund claim shall be denied."

Article 7065b-13(f) reads, in part, as follows:

". . . The refund claim, . . . shall be verified by affidavit of the claimant, or a duly authorized agent of the claimant, and shall show the quantity of refund motor fuel acquired and on hand at the be-

ginning and closing dates of the period covered
in the refund claim filed.

". . . The claim for tax refund shall include
a statement that the information shown in each dupli-
cate invoice of exemption attached to the tax refund
claim is true and correct, and that deductions have
been made from the tax refund claim for all motor
fuel used on the public highway of Texas and for all
motor fuel used or otherwise disposed of in any man-
ner in which a tax refund is not authorized here-
in . . . .

"If the refund motor fuel for which tax refund
is claimed was used on a farm or ranch or for any
agricultural purpose the claim shall show the make,
model, and year of manufacture of each tractor,
combine and other vehicle in which any refund motor
fuel included in the claim was used and the actual
work performed, showing the different kinds of crops
planted and the acreage used or set aside for each
crop, during the period of the refund claim, and
showing complete information of all other work per-
formed by each such tractor, combine or other ve-
hicle used by the claimant during the period of the
claim. The claim shall likewise show the make, kind
and horse power of each stationary engine or motor
in which refund motor fuel was used by the claimant
and the purposes for which it was used, and if any
of the motor fuel included in the claim was used
other than in the operation of motors or engines,
the claim shall show complete information as to the
manner of use and the purpose for which the motor
fuel was used. The claim shall also state the number
of automobiles, trucks, pickups and other licensed
vehicles operated regularly by the claimant or his
employees, on or in connection with the farm, ranch
or other agricultural project, and shall show the
name and address of the dealer or dealers from whom
taxable motor fuel was purchased for use in such
licensed vehicles during the period of the claim.

". . . . . .

"It shall be the duty of every person claiming
tax refund to verify the contents of the claim filed
and any such person who shall file claim for tax re-
fund on any motor fuel which has been used to propel
a motor vehicle, tractor or other conveyance upon
the public highway of Texas for any purpose for which

a tax refund is not authorized herein, or who shall file any duplicate invoice of exemption in a claim for tax refund on which any date, figure or other material information has been falsified or altered after said duplicate invoice of exemption has been duly issued by the refund dealer and delivered to the claimant, shall forfeit his right to the entire amount of the refund claim filed."

The statute also makes detailed provisions for tax refunds on motor fuel used in vehicles traveling both on and off the highway, but these provisions are pertinent only as they further reflect the detailed procedure which must be followed in order to obtain a tax refund.

In view of the specific requirement that the refund claim shall be verified by the affidavit of the claimant, and in view of the express impostion upon the claimant of a duty to verify the contents of the claim filed, the Comptroller cannot approve a tax refund claim prepared in the manner that the claims described by you were prepared.

We quote the following additional question which you have submitted to us:

"2. When a Notary Public executes and signs a notary's jurat certifying that a claim for tax refund has been subscribed and sworn to before him by the claimant, when in truth and in fact said claimant had signed the claim form in blank and left it with the Notary Public, who at a later time and after the claimant had departed from his presence filled in the requisite information, executed his jurat and filed the claim with the Comptroller, will such certification in his jurat constitute the making of a false statement by said notary public in a claim for tax refund delivered to and filed with the Comptroller, as contemplated by Section 27(m), cited above?"

Article 7065b-27 reads, in part, as follows:

". . .(m) whoever shall wilfully and knowingly make any false statement in any claim for a tax refund delivered to or filed with the Comptroller, shall be guilty of a felony . . ."

We do not think that the notaries' acts in the cases you have described to us come within the above quoted provision of Article 7065b-27. We think that this provision pertains to false

statements made by claimants for tax refunds and that the false statements contained in the notaries' jurats are not covered by this provision. However, we call your attention to Article 361, Penal Code. Article 361 reads as follows:

> "If any officer authorized by law to take depositions or administer oaths in this State, shall falsely certify that any deposition was sworn to before him, or any oath made, or shall with fraudulent intent place his certificate, signature or seal to any affidavit which is drawn with blanks as to any other matter of substance, he shall be imprisoned in the penitentiary not less than two nor more than five years. Within the meaning of this article shall be included the case of an officer who, with design that the same may be filled up and used for fraudulent purposes attaches his signature or seal of office to any paper wholly blank."

## SUMMARY

The Comptroller cannot approve motor fuel tax refund claim signed in blank by claimant and later filled in by notary public with executed jurat, and notary's act in filling in the form and executing the jurat does not constitute a felony within the provisions of Section 27(m) of Article 7065b, V.C.S.

Very truly yours,

WILL WILSON
Attorney General of Texas

By s/Marietta McGregor Payne
   Marietta McGregor Payne
   Assistant

MMP/ba/wc

APPROVED:
OPINION COMMITTEE:
Geo. P. Blackburn, Chairman
Jay Howell
J. Milton Richardson
Edward Cazares
Riley R. Fletcher

REVIEWED FOR THE ATTORNEY GENERAL
By: W. V. Geppert